UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DIANA FRANKLIN, TANISHA JACKSON,
KIZZY WILLIAMS and LASANDRA HARRIS,
individually and on behalf of others similarly situated

CIVIL ACTION

VERSUS

21-399-SDD-SDJ

JENN'S ANGELS, LLC and
JENNIFER GIBSON PEARSON

## RULING

This matter is before the Court on the *Amended Motion to Dismiss*[1] filed by Defendants, Jenn's Angels, LLC and Jennifer Pearson ("Defendants"). Plaintiffs Diana Franklin, Tanisha Jackson, Kizzy Williams, and Lasandra Harris (collectively "Plaintiffs") filed an *Opposition*.[2] For the following reasons, Defendants' *Motion* shall be denied.

**I.  BACKGROUND**

Plaintiffs bring this claim under the Fair Labor Standards Act ("FLSA") and seek to recover unpaid overtime compensation.[3] Plaintiffs allege that they were employed by Defendants "as health care workers who provided companionship services for the elderly, ill or disabled at various locations, including the patients' homes and nursing home facilities."[4] Plaintiffs assert that Defendants paid them on an hourly basis but did not pay

---

[1] Rec. Doc. No. 11. Defendants previously filed a *Motion to Dismiss*. Rec. Doc. No. 7. Defendants filed their *Amended Motion to Dismiss* before Plaintiffs replied to the original *Motion*. This *Ruling* applies to both *Motions* filed by Defendants.
[2] Rec. Doc. No. 12.
[3] Rec. Doc. No. 1, p. 1.
[4] *Id*. at 4.

69971

them overtime.[5] Plaintiffs aver that Defendants intentionally misclassified them as independent contractors in order to avoid paying them overtime.[6] Plaintiffs seek certification of a collective under 29 U.S.C. § 216(b).[7]

Defendants advance three arguments in support of their *Motion*. First, Defendants argue that they are not "employers" within the meaning of the FLSA because they do not participate in interstate commerce.[8] Second, Defendants contend that the "companionship worker" exemption to the FLSA applies to Plaintiffs, so Plaintiffs cannot seek the Act's protection.[9] Third, Defendants assert that Plaintiffs were independent contractors, so even if the FLSA applies to Defendants and the companionship exemption does not apply to Plaintiffs, the FLSA does not protect Plaintiffs.[10]

Plaintiffs counter that Defendants are employers within the meaning of the FLSA because third party employment of domestic service workers affects interstate commerce; the companionship exemption was removed in 2015; and, they were employees and not independent contractors.[11]

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[12] The Court may consider "the complaint, its proper attachments, documents incorporated into the

---

[5] *Id.*
[6] *Id.* at 5.
[7] *Id.* at 6.
[8] Rec. Doc. No. 11-1, p. 9–11.
[9] *Id.* at 8–9.
[10] *Id.* at 7–8.
[11] Rec. Doc. No. 12, p. 3–8.
[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal citations omitted).

complaint by reference, and matters of which a court may take judicial notice."[13] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[14]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[15] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[16] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[18] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[19] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20]

---

[13] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).
[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (hereinafter *Twombly*).
[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[17] *Id*.
[18] *Id*.
[19] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[20] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Whether the FLSA Applies to Defendants

Defendants argue that the FLSA does not apply to them because their localized home healthcare company does not affect interstate commerce. The application of the relevant statues and regulations leads to the conclusion that this argument is meritless.

29 U.S.C. § 207(a)(1) provides in relevant part:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Thus, the applicability of the FLSA's overtime provision turns on whether Plaintiffs or Defendants were "engaged in commerce."

29 U.S.C. § 202(a) provides in relevant part: "Congress further finds that the employment of persons in domestic service in households affects commerce." 29 C.F.R. § 552.3 defines "domestic service employment" as:

> [S]ervices of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use.

Based on the allegations in the *Complaint*, Plaintiffs fall within this definition. Therefore, the FLSA's overtime provisions apply to Defendants.

### C. Application of the Companionship Exemption

Defendants argue that the companionship exemption applies, so the overtime provisions of the FLSA do not apply to Plaintiffs. The companionship exemption provides:

69971

> The provisions of sections 206 [(minimum wage)] (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title [(overtime)] shall not apply with respect to…any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)…[21]

On its face, this section applies to Plaintiffs.

But Plaintiffs argue that 29 C.F.R. § 552.109 removes them from the scope of the companionship exemption. Effective January 1, 2015, § 552.109(a) provides:

> Third party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services.

The applicability of § 552.109(a) turns on whether Defendants are "third party employers."

In this context, a third party employer is one who employs companionship workers to work in someone else's home.[22] Plaintiffs allege that Defendants employed them to work in the homes of elderly, ill, or infirm people.[23] Therefore, based on the facts alleged in the *Complaint*, Defendants were third party employers, 29 C.F.R. § 552.109 applies, and the companionship exemption does not.

### D. Independent Contractor or Employee Analysis

Plaintiffs must have been employees of Defendants to be entitled to the protections of the FLSA.[24] Employee status is determined by the economic realities test.[25] The Fifth Circuit decision of *Parrish v. Premier Drilling*[26] provides the relevant factors for the economic realities test:

---

[21] 29 U.S.C. § 213(a)(15).
[22] *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 168 (2007).
[23] Rec. Doc. No. 1, p. 4.
[24] *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019).
[25] *Id.* at 370.
[26] *Id.*

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[27]

Further, "no single factor is determinative."[28] "Instead, the focus is on an assessment of the economic dependence of the putative employees, the touchstone for this totality of the circumstances test."[29]

Plaintiffs provide examples from the *Complaint* that support each factor of the economic realities test, while Defendants urge a fact-based argument. Defendants attach an example of the contract that they provide to workers such as Plaintiffs.[30] As this Court has stated:

> In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[31]

The contract that Defendants attach to their *Motion* is neither referenced in the *Complaint* nor central to Plaintiffs' claims. To be sure, the contract may be relevant, but *Parrish* instructs courts that contractual language is not determinative to the economic realities test.[32] The court stated, in relevant part, "the focus is on economic reality, not contractual language. Otherwise, an employer could easily evade the FLSA by simply confecting such agreements."[33] Therefore, the contract that Defendants attach to the

---

[27] *Id*.
[28] *Id*. at 380. (cleaned up).
[29] *Id*. (cleaned up).
[30] *See* Rec. Doc. No. 7-2.
[31] *Berry v. LoanCity*, 489 F. Supp. 3d 441, 446 (M.D. La. 2020) (citing *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x. 336, 340–41 (5th Cir. 2011).
[32] *Parrish*, 917 F.3d at 388.
[33] *Id*.

69971

*Motion* is not determinative. The majority of Defendants' argument is premised on alleged facts not contained within the *Complaint*. As such, the Court will not consider those alleged facts. The Court turns to the application of the economic realities test as pled in the *Complaint*.

1. Degree of Control

As to the degree of control factor, the *Parrish* court stated:

Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that [the individual] stands as a separate economic entity. This means we determine whether the worker has a viable economic status that can be traded to other companies, keeping in mind that lack of supervision [of the individual] over minor regular tasks cannot be bootstrapped into an appearance of real independence.[34]

Although the allegations in the *Complaint* as to control are limited, Plaintiffs have adequately alleged that Defendants exercised a substantial degree of control, and Plaintiffs exercised very little. Plaintiffs allege that they were required to comply with Defendants' rules and procedures.[35] Plaintiffs assert that could not accept employment from other companies.[36] And Plaintiffs allege that they did not have the ability to delegate their work to others.[37] The final allegation is critical as it indicates that Plaintiffs lacked the autonomy to hire third parties to do their work, which would be characteristic of an economic entity independent of Defendants.

2. The Extent of the Relative Investments of the Worker and the Alleged Employer

As to the relative investments factor, the *Parrish* court stated:

Our court uses a side-by-side comparison method in evaluating this factor. To do so, we compare each worker's individual investment to that of the

---

[34] *Id.* at 381. (internal citations omitted).
[35] Rec. Doc. No. 1, p. 5.
[36] *Id.* at 6.
[37] *Id.*

69971

alleged employer. Accordingly, plaintiffs' investments are not aggregated. In other words, the amount the alleged employer and [each worker] each contribute to the specific job the [worker] undertakes is compared.[38]

Plaintiffs direct the Court to the assertion within the *Complaint* that "Plaintiffs['] and the Collective Members['] financial investment was minor when compared to that of Defendants."[39] This allegation is vague and conclusory, and thus entitled to no weight. However, the Court can draw several reasonable inferences from the *Complaint.* Based on the *Complaint*, with the exception of travel time to and from clients' homes, the only investment Plaintiffs appear to have made was with their labor. The Court may also draw the reasonable inference that the Defendants invested more than Plaintiffs since Defendants were running a home healthcare company.[40] Plaintiffs have adequately alleged that they invested less in the operation of the company than Defendants.

3. <u>The Degree to which the Worker's Opportunity for Profit or Loss is Determined by the Alleged Employer</u>

As to the opportunity for profit or loss factor, the *Parrish* court stated, "[i]n evaluating this factor, it is important to determine how the workers' profits [depend] on their ability to control their own costs."[41] Two allegations from the *Complaint* are particularly relevant here.

First, the allegation that Plaintiffs were compensated on an hourly basis.[42] Since Plaintiffs were allegedly compensated on an hourly basis, the only way that they could reap a "profit" or incur a "cost" is by working more or less hours. That is, by investing more of their labor. In contrast to an independent economic entity which could increase profits

---

[38] *Parrish*, 917 F.3d at 383. (cleaned up).
[39] Rec. Doc. No. 1, p. 6.
[40] Expenditures such as marketing, billing functions, and recruiting are easily attributable to a home healthcare business.
[41] *Parrish*, 917 F.3d at 384. (cleaned up).
[42] Rec. Doc. No. 1, p. 4.

69971

by controlling their costs, Plaintiffs could only increase their "profits" by working more hours. Relatedly, the only "cost" that can be attributed to Plaintiffs based on the *Complaint* is the cost of transportation to and from clients' homes. This arrangement smacks of a typical employer-employee relationship—not an independent contractor relationship.

The second important allegation relevant to this factor is that Plaintiffs could not delegate their work responsibilities to others.[43] If Plaintiffs had been able to delegate their work to third parties, Plaintiffs would have had the ability to control their costs (in the form of how much they pay the third party) and thereby increase their profits (the difference between the hourly rate paid by Defendants to Plaintiffs and what Plaintiffs paid the third party). Again, the arrangement between Plaintiffs and Defendants is typical of an employer-employee relationship. Plaintiffs have adequately alleged that they had little opportunity for profits or losses.

    4. <u>The Skill and Initiative Required in Performing the Job</u>

As to the skill and initiative factor, the *Parrish* court stated:

> [W]hether plaintiffs have some unique skill set, or some ability to exercise significant initiative within the business is, for obvious reasons, evaluated…. But routine work which requires industry and efficiency is not indicative of independence and nonemployee status. Further, skills that are not specialized but rather are common to all employees in that position counsel against [independent contractor] status.[44]

Plaintiffs direct the Court to the following statement from the *Complaint*: "Plaintiffs and the Collective Members were employed by Defendants as healthcare workers who provided companionship services for the elderly, ill, or disabled at various locations, including the patients' homes and nursing home facilities."[45] This statement lacks any

---

[43] *Id*. at 6.
[44] *Parrish*, 917 F.3d at 385. (cleaned up).
[45] Rec. Doc. No. 1, p. 4.

69971

description of what providing "companionship services" entails, and the Court declines to speculate as to Plaintiffs' job description. Plaintiffs have not adequately alleged any facts that bear on the skill and initiative factor.

     5. <u>The Permanency of the Relationship</u>

As to the permanency of the relationship factor, the *Parrish* court identified three relevant subfactors. First, the Court must consider whether any Plaintiff worked exclusively for Defendants.[46] The focus is not on whether any Plaintiff could have worked for another company, but on whether any Plaintiff actually did.[47] Plaintiffs allege that they could not work for other companies,[48] so this subfactor weighs in favor of a permanent relationship.

Second, *Parrish* directs the Court to consider the length of the relationship between the parties.[49] According to the *Complaint*, Tanisha Jackson worked for Defendants from July 2020 to January 2021, a period of six months.[50] Kizzy Williams worked for Defendants from August 2016 to March 2021, a period of almost five years.[51] Lasandra Harris worked for Defendants from January 2017 to November 2020, a period of nearly four years.[52] While Tanisha Jackson's tenure was relatively brief, the length of both Kizzy Williams' and Lasandra Harris' relationship with Defendants is strongly indicative of a relatively permanent relationship.

---

[46] *Parrish*, 917 F.3d at 387.
[47] *Id*.
[48] Rec. Doc. No. 1, p. 6.
[49] *Parrish*, 917 F.3d at 387.
[50] Rec. Doc. No. 1, p. 2.
[51] *Id*.
[52] *Id*.

69971

Finally, *Parrish* directs the Court to consider whether the work performed was on a "project-by-project basis."[53] There is no indication in the *Complaint* that Plaintiffs worked for only one client or that Plaintiffs' work could be fairly characterized as "projects." Rather, the Court may draw the inference that Plaintiffs simply worked a given amount of hours per week. On the whole, however, resolution of this subfactor is largely unnecessary since the other two subfactors weigh heavily in favor of a relatively permanent relationship.

## III.  CONCLUSION

In sum, Plaintiffs have plausibly alleged an employer-employee relationship. Plaintiffs have alleged that: they had little control over the execution of their job duties, while Defendants had substantial control; Plaintiffs invested little, while Defendants invested an amount commensurate with operating a home healthcare company; Plaintiffs had no opportunity for profits or losses; and Plaintiffs enjoyed a relatively permanent relationship with Defendants. It is not determinative that Plaintiffs failed to include allegations as to the skill and initiative required in performing the job because no one factor is determinative.[54] Therefore, Defendants' *Motion* must be denied.

Defendants' *Amended Motion to Dismiss*[55] and *Motion to Dismiss*[56] are denied.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on January 6, 2022.

                                                                     *Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[53] *Parrish*, 917 F.3d at 387.
[54] *Id*. at 385.
[55] Rec. Doc. No. 11.
[56] Rec. Doc. No. 7.